UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CARNELL HUNNICUTT         :    PRISONER
    *Plaintiff,*          :    CIVIL NO. 3:02CV947(JBA)(JGM)
                          :
    VS.                   :
                          :
JOHN ARMSTRONG, ET AL.    :
    *Defendants.*         :    OCTOBER 7, 2003

DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS

I.    FACTS

Plaintiff brings this action under 42 U.S.C. § 1983 against numerous defendants. Plaintiff sues Commissioner Armstrong claiming that he is liable because he promulgated Administrative Directive 9.4. Plaintiff's Amended Complaint, para. 25. Plaintiff claims that defendants Matos, Tokarz, Myers, Coates, Whidden, Lajoie, Faneuff, Butler, Weir, were active participants in enforcing "illegal policies" to violate plaintiff's constitutional rights. Plaintiff alleges that defendants Wollenhaupt and Katz-Fineberg conspired with the defendants to cover up the plaintiff's injuries caused by DOC staff and denied plaintiff medical treatment.

According to the plaintiff, defendants Chaplin, Latier, Wooven and Power did not conduct any mental health evaluation to determine the damage of plaintiff's mental capacities, failed to provide assistance to alleviate mental suffering and/or conspired with defendants to cover psychological damages inflicted on the plaintiffs.

Plaintiff alleges that he remained in the Phase program at Northern for over four years. Plaintiff alleges that he was held on A/S status indefinitely without a review. According to plaintiff,

the conditions of his confinement were atypical and significant deprivations. Plaintiff alleges that he was sent back to Phase I from Phase III for drawing a cartoon staff deemed obscene or threatening. Plaintiff alleges that this violated his due process rights because he would not have initially been placed or could not initially be placed into administrative segregation based upon the drawing of such a cartoon. Plaintiffs' Amended Complaint, para. 27.

Plaintiff also challenges the programming offered within the administrative phase program. Plaintiff's Amended Complaint, para. 28. Plaintiff alleges that they are "mental health based programs."

According to the plaintiff, he was denied due process after being transferred to Big Stone Gap, Virginia (Wallens Ridge State Prison) because he was given no opportunity or programs to progress. Plaintiff's Amended Complaint, para. 32. Plaintiff alleges that he received infractions in Virginia and had to serve sanctions imposed for said infractions in Virginia. Plaintiff's Amended Complaint, para. 32. Plaintiff alleges that forcing him to serve the same sanctions again in Connecticut constituted double jeopardy. Plaintiff's Amended Complaint, para. 32.

Plaintiff complains that he was locked down in a cell for four and a half (4½) years for twenty-three (23) hours a day and twenty-four (24) hours a day on weekends. Plaintiff's Amended Complaint, para. 34. Plaintiff alleges that the cell was equipped with the basic furnishings bunk, desk, sink and toilet. Plaintiff alleges that he was allowed certain personal books, papers, socks, undershorts, t-shirts, limited cosmetics and a jumpsuit. Plaintiff alleges that forcing inmates who are deemed a threat to each other to live together violates the Eighth Amendment. During his

deposition, plaintiff admitted that he never advised staff that he had been assaulted or threatened to be assaulted by a cellmate.

Plaintiff also alleges that when inmates refused cell partners, they were either maced, slammed into walls/doors and placed on in-cell restraints. Plaintiff's Amended Complaint, para. 37. Plaintiff alleges that after being placed into in cell restraints, inmates were then threatened with being placed into four point restraints if they still refused to take a cellmate. Plaintiff's Amended Complaint, para. 38.

Plaintiff alleges that once, when he was placed into four point restraints, the defendants allowed DOC staff to beat him. Plaintiff's Amended Complaint, para. 38. Plaintiff fails to identify which defendant allowed DOC to beat him and/or how they allowed this beating to occur.

Plaintiff alleges that he was routinely subjected to retaliatory/fabricated DR's by DOC staff. Plaintiff's Amended Complaint, para. 39.

Plaintiff claims that "plaintiffs" were subjected to retaliatory/fabricated disciplinary reports and not allowed access to video surveillance equipment to defend against such disciplinary reports. Plaintiff claims that he lost phone visits and loss commissary privileges as a result of the DRS.

Plaintiff complains about having to engage in recreation in full restraints for four and a half (4 ½) years.

Plaintiff also complains about losing educational, vocational, addiction and self help services and programs, especially religious services. Plaintiff also complains that the reading material provided to inmates were old, torn pages, or just plan undesirable.

Plaintiff further claims that his attempts to exhaust administrative remedies were deliberately hampered and not investigated by defendants Armstrong, Matos, Tokarz, Coates, Myers, Whidden, Lajoie, Butler, Weir and Faneuff.  Plaintiff claims that grievances were routinely lost or misplaced.

According to the plaintiff, a meaningful review for his removal from A/S status was never conducted.  Plaintiff claims that he was denied classification hearings, and that classification was conducted on the tier in the presence of other inmates.

Plaintiff claims he was denied both medical and mental health treatment.

Approximately two months before filing this instant case, plaintiff entered into a settlement agreement settling the claims he seeks to raise in this case.  More specifically, in May 2002, plaintiff settled six pending federal court actions and fifteen state court actions for $5,000 and the pursuit of an out of state transfer.  In the settlement agreement, the parties expressly acknowledged that "this settlement is intended to, and shall, constitute full and final settlement of all claims and/or rights of action which have arisen , or may in the future arise, out of any of the circumstances which are the subject of these lawsuits, which could have been the subject of these lawsuits and/or relate to, refer to, and/or reflect plaintiff's incarceration in the State of Connecticut."

In the matter Hunnicutt v. Armstrong, 3:98CV1856, plaintiff brought suit against John Armstrong, Giovanny Gomez, Paul Bradnan, Chris McDonald, Sebastian Mangiafico, James Cook, James Hick, Jack Tokarz, Rhonda Arnold, Hector Rodriguez wherein plaintiff raised a number of complaints about his ability to practice a ritual known as smudging related to his Native American religion.  Plaintiff alleged that the actions of the defendants burdened his free exercise of religion

under the first amendment.  This case was specifically made part of the settlement agreement entered

into by the parties in May 2002.

Moreover, in the matter Hunnicutt v Warden, 02-0003518, also specifically set forth in the

settlement agreement, plaintiff challenged the administrative segregation hearings, what he claimed

to be forced participation in a mental health based program, "harassment/retaliation due to indefinite

confinement while subjected to sensory deprivation/torture and prolonged isolation." Petition for

Writ of Habeas Corpus Relief p. 4.  Petitioner also alleged

> This program implemented by psychologist Patrick Hynes is based on Psychological
> Torture Techniques/ and Physical Torture to Break Down Prisoners to Obey Arbitrary
> DOC Policies/Rules.  Failure to take part in this forced mental health program results
> in Prolonged Confinement/Indefinite Confinement at this Facility which the petitioner
> has been for four (4) years.  In that time the petitioner has been assaulted numerous
> times-denied medical treatment by the administration at Northern C.I. for not
> participating in the mental health based "phase program." The petitioner is held at
> Northern for exercising his first amendment rights which he is repeatedly penalized
> by the defendants as a means of control through isolation/verbal harassment/forced
> idleness/mail   tampering/disclosure   of   confidential   information/denial   of
> religion/confession forced under torture and violence.  . . .  The petitioner was
> transferred to Wallens Ridge State Prison in Big Stone Gap, Va for six (6) months.
> While there, the petitioner had no opportunity to move forward to re-enter general
> population and sat in administrative seg doing "dead time" with no program
> (violation of due process).    Thye petitioner received disciplinary reports for
> exercising his first amendment rights (freedom of speech/publication) and was
> infracted with disciplinary reports.  Upon returning to Northern C.I. the petitioner was
> held back to progress to Phase II due to these D/Rs.  On one of the D/Rs the warden
> at Wallens Ridge State Prison Ordered a Rehearing, the petitioner was never given
> the re-hearing although he notified Cpt. Maurice Butler- Major Michael Lajoie and
> Warden Myers who ignore this matter.  These defendants also ignored the fact the
> D/Rs have no bearing on the Phase program due to there was no program in Virginia
> and the plaintiff served his sanctions in Virginia only to be punished again in
> Connecticut.  . . . The petitioner was held back from progressing through the "Phase
> Program" by Cpt William Faneuff-Warden Larry Myers-Major Michael Lajoie-
> Majore Thomas Coates and numerous employees who are all being sued by the

petitioner for numerous constitutional violations. . . . The petitioner is "reviewed" by these same defendants behind closed doors whereas the petitioner cannot have any input or hear what is being said. These secret meetings are full of D.O.C. staff who at anytime, with anyone person can deny the petitioner from progressing or fabricate a reason to stop the petitioner from progressing. . . . The petitioner's constitutional rights have and are still being violated due to his indefinite confinement in A/S. . . . The petitioner for the last four years have been confined in a cell 23 to 24 hours a day. . . . Recreation is non existent due to being fully restrained with no opportunity to do calisthenics, isometric and aerobic exercises. The denial of religious services is an ongoing battle due to the unconstitutional burden the defendants places on the petitioner's beliefs. . . . . The petitioner is forced under isolation condition to cell with another prisoner, locked down 23 to 24 hours a day for indefinite lengths of time which violates the eighth amendments cruel and unusual punishment and failure to protect clause. Such confinement poses a serious risk to all prisoners health and safety due to the lengths of this confinement, the close proximity and prolonged inactivity. . . . The practice at Northern C.I. is to place me in cells with assaultive prisoners, in hopes I'll be attacked, while staff laugh and encourage this type of behavior. . . . The Northern C.I. A/S Program forces prisoners who wants recreation/showers to be handcuffed from behind, while his cell partner remains uncuffed with a closed door deparating the officer's from them. This practice had lead to serious assaults between "cell partners" whereas to the one who is uncuffed beats/kicks the one whose cuffed. . . .

Hunnicutt v. Warden, pro se habeas petition p. 4a-4d.

In the matter Hunnicutt v. St. John et al, 3:01CV770(AHN), which was part of the settlement agreement, Hunnicutt alleged that he was beaten while in four point restraints. Complaint par. 53. Plaintiff also alleged that he requested to use videotapes in his defense of the disciplinary report but his request was denied. Complaint par. 61.

In the matter, Hunnicutt v. UConn Health Center, CV00-0803075, plaintiff alleged that Nursing Supervisor Wollenhaupt, "has refused to correct the problem of medical staff falsifying medical incident reports. . . . " Amended Complaint par. 6. p. 3-4.

For the following reasons, defendants move to dismiss this matter.

6

## II.  DISCUSSION

### A.  THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

#### 1.  STANDARDS FOR MOTION TO DISMISS

The function of a motion to dismiss is to test the legal feasibility of a complaint.  Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984).  A complaint should be dismissed if it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Conley v. Gibson, 355 U.S. 41, 45-6 (1957).

In deciding a motion to dismiss the court assumes all factual allegations in the complaint are true and construes them most favorably to plaintiff.  Scheur v. Rhodes, 416 U.S. 232, 236 (1974).  In addition to the complaint, the court may consider and construe any exhibit attached to the complaint.  Paulemon v. Tobin, 30 F.3d 307, 308-09 (2d Cir. 1994).  Moreover, a document outside the pleadings may be considered if "1) there was undisputed notice to plaintiffs of the document's contents and 2) the document was integral to plaintiff's claim."  Degrooth v. General Dynamics Corp., 837 F. Supp. 485 (D.Conn. 1993)  affirmed 28 F.3d 103 (1994) cert. denied 115 S.Ct. 637 (1994).

### B. THE ELEVENTH AMENDMENT BARS MONEY DAMAGES AGAINST THE DEFENDANTS IN THEIR OFFICIAL CAPACITIES

A suit against the defendants in their official capacities for money damages is in effect against the State of Connecticut and is barred by the Eleventh Amendment to the United States

Constitution.  Edelman v. Jordan, 415 U. S. 651, 663  (1974).  Even if the State is not specifically named as a defendant, the State may nevertheless be the real party in interest if State funds would be used to satisfy any damage award.  See, Ford Motor Co. v. Dept. of Treasury, 323 U. S. 459, 464 (1945).  Thus, when a state official is sued in his official capacity, he is an agent of the State and is therefore protected from liability for damages by the Eleventh Amendment.  Scheuer v. Rhodes, 416 U. S. 232, 237-38 (1974).

There are exceptions to the above general rule, for example, when a State voluntarily waives its immunity through legislation, or where Congress has specifically abrogated this immunity to ensure the equal protection of the laws for all citizens.  See, Fitzpatrick v. Bitzer, 427 U. S. 445, 451-56 (1976).

Neither of the exceptions apply here because there is no indication that the State of Connecticut has waived its immunity and consented to be sued and, it is clear that Congress did not intend to abrogate the sovereign immunity of the states when it enacted the Civil Rights Act, 42 U.S.C. § 1983.   Accordingly, the action against the defendants in their official capacities for money damages  should be dismissed.

### C.    PLAINTIFF'S CONCLUSORY CLAIMS AND CLAIMS DEVOID OF PERSONAL ALLEGATIONS SHOULD BE DISMISSED

"Complaints relying on civil rights statutes are plainly insufficient unless they contain some specific allegation of fact indicating a deprivation of civil rights, rather than simple conclusions." Koch v. Yunich, 533 F. 2d 80, 85 (2nd Cir. 1976) (emphasis added); see, e.g. Powell v. Jervis, 460 F.2d 551, 553 (2d Cir. 1976); Louis v. Ward, 444 F.Supp. 1107, ll09 (S.D.N.Y. 1978). A complaint

relying on civil rights "must set forth facts showing some intentional and purposeful deprivation of constitutional rights." Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944). The plaintiff must allege facts that indicate that the defendant has acted under color of state law to deprive him of a constitutionally or federally protected right. Lugar v. Edmondson Oil Co., 457 U.S. 922, 930 (1982); Washington v. James, 782 F.2d 1134, 1138 (2d. Cir. 1986) (emphasis added); see also, Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987); Mazurek v. Wolcott Bd. of Educ., 815 F. Supp. 71, 77 (D. Conn. 1993).

    This complaint does contain some general allegations, framed in broad language, that defendants successfully conspired to deprive plaintiff of his rights. But Plaintiff is bound to do more than merely state vague and conclusory allegations respecting the existence of conspiracies. It is incumbent upon him to allege with at least some degree of particularity overt acts in which Defendants engaged that were reasonably related to the promotion of a claimed conspiracy. Hoffman v. Halden, 268 F.2d 280, 295 (9th Cir. 1959), rev'd in part on other grounds, 300 F.2d 34 (9th Cir. 1962).

> In a civil conspiracy, the conspiracy itself is not a cause of action, without overt acts, because again it is the overt act which moves the conspiracy from the area of thought and conversation into action and causes the civil injury and resulting damage. Accordingly, the cases hold that the damage in a civil conspiracy flows from the overt acts and not from the conspiracy.
> Therefore, the certainty we look for in a proper complaint under the Civil Rights Statutes, is not in the general allegations of conspiracy, purpose, intent and color of authority but the certainty and substance in the particular acts which are alleged to have caused damage. The real question is whether or not the amended complaint, in addition to the general allegations referred to above, sets forth with certainty facts showing particularly what a defendant or defendants did to carry the conspiracy into effect, whether such acts fit within the framework of the conspiracy alleged, and

whether such acts, in the ordinary course of events, would proximately cause injury to
the plaintiff.

Id. at 295 (emphasis added).

In Jones v. Owen Federal Bank, 147 F. Supp. 2d 219 (S.D.N.Y. 2001), the Court found that

claims of conspiracy to violate the civil rights of a property owner whose mortgage default had led

to foreclosure were insufficient to withstand a motion to dismiss. Plaintiff claimed that defendants

conspired against him during foreclosure proceedings, but the court held that the alleged claims

"merely recited the state foreclosure history and are not sufficiently clear to have provided ... a fair

understanding of what the plaintiff is complaining about or to have allow the [defendants] to know

whether there is a legal basis for recovery." Jones, 147 F. Supp. 2d at 224. To claims that the

defendants engaged in conduct proscribed by the Fair Debt Collection Practices Act which violated

his civil rights, the court found that "Plaintiff fails to allege what that conduct consisted of, who

specifically engaged in the conduct and when the conduct took place." Id.

Similarly, a court found that allegations devoid of substantive facts were too conclusory as to

be actionable in Vitale v. Nuzzo, Jr., et al., 674 F. Supp. 402 (D. Conn. 1986). In Vitale, the plaintiff

alleged that defendants has conspired with the state trial judge to deprive him of equal protection

rights as well as the Eighth Amendment guarantee against cruel and unusual punishment.

The Court held:

It is of course generally true that a complaint may be dismissed "only if it is clear that
no relief could be granted under any set of facts that could be proved consistent with
the allegations", Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S.
Ct. 2229 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S.
Ct. 99 (1957), and a pro se complaint is naturally held to "less stringent standards

than formal pleadings drafted by lawyers", Haines v. Kerner, 404 U.S. 519, 520, 30 L. Ed. 2d 652, 92 S. Ct. 594 (1972). On the other hand, there must be factual allegations of substance beyond conclusory labels and assertions, "at least some allegations of facts indicating a deprivation of civil rights", Fine v. City of New York, 529 F.2d 70, 73 (2d Cir. 1975). (citation omitted). That minimum safeguard to indicate the genuine existence of a federally actionable claim, moreover, is particularly appropriate when the complaint rests on a broad claim of "conspiracy", in which case "diffuse and expansive allegations are insufficient", Ostrer v. Aronwald, 567 F.2d 551, 553 (2d Cir. 1977).

Id. at 404 (emphasis added). See e.g., Kashelkar v. Rubin & Rothman, 97 F. Supp. 2d 383 (S.D.N.Y. 2000); Scheiner v. Wallace, 1995 U.S. Dist LEXIS 11070 (S.D.N.Y. 1995); See also, e.g., Powell v. Jarvis, 460 F.2d 551 (2d Cir. 1972).

Here, plaintiff alleges that Major Lajoie enforced illegal policies and violated plaintiff's constitutional rights in conspiracy with defendants. Amended Complaint, para. 8. Similarly, plaintiff alleges that Captain Butler conspires with the defendants and willingly enforced illegal policies and practiced pitting prisoners against each other through double celling. Amended Complaint, para. 10. Plaintiff also alleges that defendants Myers, Coates, Lajoie, Whidden, Faneuff, Weir and Butler "routinely violated the plaintiff's eighth and fourteenth amendment rights in conspiring and enforcing unlimited sanctions on the plaintiffs to keep them on segregation status indefinitely." Amended Complaint, para. 42. In addition, plaintiff alleges that defendant Wollenhaupt conspired with the defendants to cover up the plaintiff's injuries and incidents caused by DOC staff. Amended Complaint, para. 12. Plaintiff also alleges that defendant Katz-Feinberg knowingly and willingly conspired with the defendants to falsify documents/medical charts. Amended Complaint, para. 13. Simliarly, plaintiff alleges that defendants Chaplin, Wooven

and Power conspired with defendants to cover psychological damage inflicted on the plaintiff and to falsify plaintiff's mental health issues. Amended Complaint, para. 14.    Plaintiff further alleges that defendants Matos and Tokarz conspired to enforce illegal policies upon plaintiff. Amended Complaint, para. 17.

Similarly, in the Eighth Cause of Action, plaintiff alleges "Conspiratorially planned disciplinary/appeal process violated the plaintiffs' eighth and fourteenth amendment rights and due process law." In the Eleventh Cause of action, plaintiff alleges, "Deliberate Denial and Hampering through Conspiratorially planned grievance procedure violated due process law and the fourteenth amendment."

In the Twelfth Cause of Action, plaintiff states, "Conspiratorially planned disciplinary sanctions that are unlimited violates the Eighth and Fourteenth Amendments Also Constitutes Cruel and Unusual Punishment."

Finally, in the Twentieth Cause of Action, plaintiff alleges, "The Forcing of Unconstitutional/Illegal Policies on the Plaintiffs by the Defendants Constituted Deliberate Indifference- Conspiracy-Cruel and Unusual Punishment In Violation of the Plaintiffs First-Fourth-Eighth-Fourteenth and Due Process Clause of the U.S. Constitution.

Plaintiff offers insufficient delineation of his assertions of conspiracy and violations of his civil rights. Plaintiff's allegations of a conspiracy in the complaint are no more than diffuse and expansive allegations that are insufficient to support a claim for conspiracy. Accordingly, these claims should be dismissed for failure to state a claim upon which relief may be granted

**D.    PLAINTIFF'S ATTEMPT TO RELITIGATE CLAIMS THAT WERE PREVIOUSLY DISPOSED OF SHOULD FAIL**

The doctrine of res judicata serves to prevent the Plaintiff from attempting to relitigate claims raised in other lawsuits that were disposed of.    The doctrine of res judicata or claim preclusion states that a final and valid judgment on the merits of a claim precludes subsequent action on that claim.

Under the Full Faith and Credit Clause of the United States Constitution, U.S. Const. Art. IV, § 1, "federal courts must accord state court judgments the same preclusive effect as other Courts within that state." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).   One Court has reasoned, "Plaintiffs simply cannot hop from judge to judge bringing actions against different defendants out of the same transaction. Such behavior is utterly at odds with the judicial repose policy." Heritage Hills Fellowship v. Plouff, 555 F. Supp. 1290, 1297-98 (E.D. Mich. 1983).   It is clear that a dismissal, with prejudice, arising out of a settlement agreement operates as a final judgment for res judicata purposes. See, e.g., Nemaizer v. Baker, 793 F.2d 58, 60-61 (2d Cir. 1986).

> A dismissal with prejudice has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action.   Wainwright Securities, Inc. v. Wall St. Transcript, 80 FRD 103, 105 (S.D.N.Y. 1978). Such a dismissal constitutes a final judgment with the preclusive effect of "res judicata not only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the suit." Heiser v. Woodruff, 327 U.S. 726, 735, 90 L.Ed. 970, 66 S.Ct. 853 (1946); Teltronics v. LM Ericsson Telecommunications, 642 F.2d 31, 35, (2d Cir. 1981).
>
> Id.

To determine whether the plaintiff is barred from litigatin the claims which were asserted in the state habeas proceeding, the court looks to Connecticut law. Burgos v. Hopkins, 14 F.3d 787, 790, (2d Cir. 1994).

In McCarthy v. Warden, 213 Conn. 289, 567 A.2d 1187 (1989) cert denied 496 U.S. 939, 110 S.Ct. 3220, 110 L.Ed 2d 667 (1990) the Connecticut Supreme Court applied the doctrine of res judicata and barred a second action brought by an inmate. More specifically, an inmate brought a federal civil rights action challenging a disciplinary report. The district court found in favor of the defendants. Thereafter, the inmate filed a habeas corpus action challenging the disciplinary report and the state habeas judge refused to give the federal district court decision any preclusive effect. On appeal the Connecticut Supreme Court reversed holding:

> The petitioner argues nonetheless that res judicata is inapplicable on the ground that, even if we conclude that there was transactional identity between his federal civil rights action and his state habeas corpus action, the federal court lacked remedial authority over good time credits. This argument is based on Preiser v. Rodriguez, 411 U.S. 475, 490, 93 S.Ct 1827, 36 L.Ed. 2d 439 (1973), the United States Supreme Court held that federal courts should not entertain a civil rights action under 42 U.S.C. §1983 for the restoration of good time credits. Relying on principles of comity, the court took the view that such issues should be adjudicated only in actions for habeas corpus, which would require a state prisoner first to exhaust his state court remedies for alleged constitutional errors in prison administration. Id. 491-94. In Wolff v. McDonnell, 418 U.S. 539, 554, 94 S.Ct 2963, 41 L.Ed 2d 935 (1974), the United States Supreme Court construed Preiser as continuing to permit a state prisoner to challenge such alleged constitutional errors in a damages claim under 42 U.S.C. § 1983. The court held that "Preiser expressly contemplated that claims properly brought under § 1983 could go forward while actual restoration of good-time credits is sought in state proceedings." Id. While we agree with the petitioner that Preiser and Wolff allowed him to proceed with a civil rights damages action to test the constitutional validity of disciplinary proceedings, we are unpersuaded that the reasoning of those cases precludes the applicability of res judicata in the present litigation. The proposition that parallel proceedings in federal and state courts may

expedite the vindication of constitutional rights, when administrative error has been shown to exist, does not justify relitigation of allegations of constitutional issues that have been found to be substantively groundless. Indeed, Preiser expressly states that "res judicata has been held to be fully applicable to a civil rights action brought under § 1983." Preiser v. Rodriguez, supra 497. Furthermore, Wolff notes that "normal principles of res judicata" apply to parallel federal and state challenges of state disciplinary proceedings. Wolff v. McDonnell, supra, 554 n. 12. Finally, the jurisprudential concern for comity that underlies Preiser is fully served, in this case, by applying the principle of res judicata.

Id at 296-97

"A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose . . . The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." (Citations omitted; internal quotation marks omitted.) Delahunty v. Massachusetts Mutual Life Ins. Co., 236 Conn. 582, 589, 674 A.2d 1290 (1996). The doctrine of res judicata is "based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate." Id., 591.

Accordingly, under Connecticut law, plaintiff cannot now pursue in federal court, claims that plaintiff made or could have made in his state court habeas action, CV02-3518, state court mandamus/money damages claim: Hunnicutt v. UConn, CV00-0803075. In addition, under federal law, plaintiff may not raise in this action, claims which were settled out of the federal court civil rights actions, Hunnicutt v. St. John, 3:01 CV770 (AHN), Hunnicutt v. Armstrong, 3:98CV1856.

In this matter, plaintiff claims that 1) he was kept in Administrative Segregation for over four years without a review, 2) the programs in AS were mental health based, 3) he was forced to serve

15

the same sanctions he received in Virginia over again in Connecticut, 4) he was forced to share a cell with another inmate, and 5) he had to recreate in full restraints. Each and every one of these claims was raised in the matter, Hunnicutt v. Warden, CV02-3518, which was made part of the global settlement for which plaintiff receive $5000 and the pursuit of an out of state transfer. Under Connecticut law, the settlement of the matter Hunnicutt v. Warden, CV02-3518, for $5000 is res judicata to plaintiff raising the identical complaints in this matter.

Similarly, in this action, plaintiff complains about losing religious services. Again, in the matter, Hunnicutt v. Armstrong, 3:98CV1856, plaintiff brought suit against a number of defendants alleging his inability to practice certain Native American rituals. This lawsuit was also part of the global settlement of the Hunnicutt matters for which plaintiff received $5,000 and the pursuit of an out of state transfer. Plaintiff raised or could have raised all complaints about religious services within the Hunnicutt v. Armstrong matter 3:98CV1856. Thus, the settlement of this action must be deemed res judicata, prohibiting plaintiff from maintaining his claims in this action about the loss of religious services.

Similarly, in Hunnicutt v. UConn, CV00-0803075, plaintiff brought an action alleging that defendant Wollenhaupt and her staff falsified medical documentation. Again, this action, entitled one for a mandamus, seeking $120,000 in damages was part of the Hunnicutt global settlement, for which he received $5,000 and an out of state transfer was sought for him. The doctrine of res judicata thus prohibits plaintiff from pursuing those claims in this case.

Finally, plaintiff also alleges that once, when he was placed into four point restraints, the defendants allowed DOC staff to beat him and that staff would not allow plaintiff to use the facility video tapes to defend himself in disciplinary hearings. Plaintiff's Amended Complaint par. 53, 61. Hunnicutt v. St. John, et al, 3:01CV770 (AHN) was also included in the global Hunnicutt settlement. Again, under res judicata, plaintiff is prohibited from suing in this case about alleging being beaten while in four point restraints and/or being denied access to facility videotapes to defend himself against prison disciplinary reports.

All of the claims which the plaintiff seeks to present to this court were already presented to the state court and/or this court in other matters and settled in a global settlement of both state and federal court matters. As part of the global settlement, plaintiff released, the State of Connecticut Department of Correction and its agents, officials or employees from "all actions, causes of action, suits, claims, controversies, damages, and demands of every nature and name, in law or in equity, including attorney's fees and costs with Carnell Hunnicutt, his sucessors and assigns, ever had, **now has**, or hereafter can, shall or may have, including but not limited to the following matters:

Hunnicutt v Armstrong, et al., No. 3:98CV01856(HBF)

Hunnicutt v. Mangiafico, et al., No. 3:98CV02455(HBF)

Hunnicutt v. Mangiafico, et al., No. 02-50 (Second Circuit Court of Appeals)

Hunnicutt v. LaJoie, et al., No. 3:01CV02054(DJS)

Hunnicutt v. St. John et al., No. 3:01CV0770(AHN)(HBF)

Hunnicutt v. Gomez, et al., No. 3:99CV01362 (AWT)

Hunnicutt v. Myers, et al., No. 3:99CV02412 (JBA). . .

Hunnicutt v. Shea, Docket No. CV-00-0800685-S

Hunnicutt v. Rowland, Docket No. CV-00-0803074-S

Hunnicutt v. UConn Health Center, Docket No. CV-00-0803075-S

Hunnicutt v. Rowland, Docket No. CV-00-0803076-S

Hunnicutt v. Faneuff, Docket No. CV-00-0803077-S

Hunnicutt v. Rowland, Docket No. CV-00-0803441-S

Hunnicutt v. Lynch, Docket No. CV-01-0804691-S

Hunnicutt v. Anderson, Docket No. CV-01-0804692-S. . .

Hunnicutt v. Warden, Docket No. CV-96-0563129-S

Hunnicutt v. Warden, Docket No. CV-02-0003518-S

Hunnicutt v. Warden, Docket No. CV98-0002768-S

Hunnicutt v. Warden, Docket No. CV-98-0002824-S

Hunnicutt v. Warden, Docket No. CV-99-0002991-S

Plaintiff's attempt to advance those same claims again amounts to nothing more than an attempt to relitigate matters that were settled well over a year ago. Plaintiff signed the release, settling all of this cases on May 3, 2002 and then filed this complaint in July 2002. The settlement of these cases bars plaintiff's attempt, two (2) months later to relitigate all this matters. Indeed, the language of the release could not be clearer in this regard. Because plaintiff should not be allowed to relitigate these matters, this action should be dismissed.

**D.    THIS ACTION SHOULD BE DISMISSED AS PLAINTIFF HAS NOT ALLEGED THAT HE SUFFERED AN ACTUAL INJURY FROM THE ALLEGED DENIAL OF MEDICAL CARE**

Because plaintiff has not alleged and cannot allege that he was injured by the defendants alleged denial of medical care this claim should be dismissed.

It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution. In the context of the present case: It is for the courts to remedy past or imminent official interference with individual inmates' presentation of claims to the courts; it is for the political branches of the State and Federal Governments to manage prisons in such fashion that official interference with the presentation of claims will not occur. Of course the two roles briefly and partially coincide when a court, in granting relief against actual harm that has been suffered, or that will imminently be suffered, by a particular individual or class of individuals, orders the alteration of an institutional organization or procedure that causes the harm. But the distinction between the two roles would be obliterated if, to invoke intervention of the courts, no actual or imminent harm were needed, but merely the status of being subject to a governmental institution that was not organized or managed properly. If--to take another example from prison life--a healthy inmate who had suffered no deprivation of needed medical treatment were able to claim violation of his constitutional right to medical care, see Estelle v Gamble, 429 US 97, 103, 50 L Ed 2d 251, 97 S Ct 285 (1976), simply on the ground that the prison medical facilities were inadequate, the essential distinction between judge and executive would have disappeared: it would have become the function of the courts to assure adequate medical care in prisons.

Lewis v. Casey, 518 U.S. ____, 116 S.Ct. ____, 135 L.Ed2d 606, 616-17 (1996) (emphasis added).

Here, plaintiff has not alleged that any injury resulted from defendants' alleged denial of medical care. Indeed, plaintiff does not specify what the injury[1] was for which he needed treatment nor does he specify how he was injured by the alleged lack of treatment. Plaintiff's allegations that he was denied medical care, without more are insufficient to maintain this § 1983 claim in federal court. Accordingly, plaintiff's claim about medical care should be dismissed.

---

[1]   Perhaps, plaintiff does not specify the injury he alleges he did not receive treatment for, because this claim is an attempt to relitigate plaintiff's claims regarding his hand pain. See Hunnicutt v. Commissioner of Correction, 67 Conn. App. 65 (2001).

**F.    PLAINTIFF'S CLAIM OF FORCED PARTICIPATION IN THE PHASE PROGRAM GROUP THERAPY SHOULD BE DISMISSED BECAUSE THE CLAIM DOES NOT AMOUNT TO A CONSITUTIONAL VIOLATION**

Plaintiff has alleged "Mandatory forced/coerced 'Phase Program' discussing group therapy violates the Fourth Amendment to the U.S. Constitution." Pl. Amend. Compl.  34 (Fifth Cause of Action). However, the Supreme Court has ruled that the loss of privileges that an inmate would face for refusing to take part a mandatory rehabilitation program did not amount to unconstitutional coercion.

The [Supreme] Court has instructed that rehabilitation is a legitimate penological interest that must be weighed against the exercise of an inmate's liberty. See, e.g. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 351 (1987). Since "most offenders will eventually return to society, [a] paramount objective of the corrections system is the rehabilitation of those committed to its custody." Pell v. Procunier, 417 U.S. 817, 823 (1974). Acceptance of responsibility in turn demonstrates that an offender "is ready and willing to admit his crime and to enter the correctional system in a frame of mind that affords hope for success in rehabilitation over a shorter period of time than might otherwise be necessary." Brady v. United States, 397 U.S. 742, 753 (1970).

> The limitation on prisoners' privileges and rights also follows from the need to grant necessary authority and capacity to federal and state officials to administer the prisons. See, e.g., Turner v. Safley, 482 U.S. 78 (1987). "Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." Id., at 84-85. To respect these imperatives, courts must exercise restraint in supervising the minutiae of prison life. Id. Where, as here, a state penal system is involved, federal courts have "additional reason to accord deference to the appropriate prison authorities." Id.

McKune, 536 U.S. at 36–37 (prison requirement that an inmate either participate in the sex offender rehabilitation program, and admit criminal conduct, or face loss of prison privileges did not violate the inmate's privilege against compelled self-incrimination). In McKune, as part of the prison rehabilitation efforts, the inmate was required either to participate in a sex offender treatment program which involved admitting his criminal conduct, including uncharged offenses, or be transferred to another prison with less favorable conditions.

> [His] visitation rights, earning, work opportunities, ability to send money to family, canteen expenditures, access to personal television, and other privileges automatically would be curtailed. In addition, [the inmate] would be transferred to a maximum-security unit, where his movement would be more limited, he would be moved from a two-person to a four-person cell, and he would be in a potentially more dangerous environment.

Id. at 30–31. The inmate contended that the requirement violated his privilege against self-incrimination, since he was being compelled to admit to conduct which could subject him to criminal prosecution. The United States Supreme Court held, however, that not only did the loss of privileges that the inmate would face for refusing to incriminate himself fail to amount to unconstitutional coercion, but they failed to even constitute a liberty interest sufficient to invoke due process. The state had a legitimate penological interest in rehabilitating the inmate, and the lack of severity of consequences for refusing to participate in the program belied the inmate's claim of compulsion. The inmate's incarceration necessarily involved restrictions on his liberty, and the de minimus adjustment of those restrictions to serve proper prison goals, as the alternative to admitting criminal conduct, did not violate the inmate's privilege against compelled self-incrimination. Id. at 37–42.

In the instant case, plaintiff alleges that release from segregation was predicated upon his completion of certain programs within the administrative segregation program.    Since the consequences of not participating in the rehabilitative program were held to not constitute constitutional compulsion in <u>McKune</u>, the consequences of plaintiff's not participating in the rehabilitative program at Northern Correctional Institution also do not constitute constitutional compulsion.

Plaintiff alleges that he was unable to progress out of the phase program unless he participated in the mandatory mental health based programs.    Similarly, inmate <u>McKune</u> faced the prospect of transfer to more restrictive housing for refusing to take part in a mandatory sex offender rehabilitative program. The Supreme Court found that inmate <u>McKune's</u> constitutional privileges were not violated by the state's exercise of its legitimate penological interest in having <u>McKune</u> complete the sex offender program.    Similarly, this court should dismiss plaintiff's claim that mandatory participation in the Phase Program group violated his constitutional rights under the Fourth Amendment.    Having to participate in the phase program before plaintiff could leave Northern simply does not trigger any constitutional concerns.

### G.    PLAINTIFF HAS NO RIGHT TO A SINGLE CELL

Similarly, plaintiff's allegations that he was forced to be double celled, also fails to state a cognizable claim.

In <u>Farmer v. Brennan</u>, 511 U.S. 825, 114 <u>S.Ct.</u> 1970 (1994), the Supreme Court defined the

standard to be applied in this case as follows:

> We hold instead that a prison official cannot be found liable under the Eighth
> Amendment for denying an inmate humane conditions of confinement unless the
> official knows of and disregards an excessive risk to inmate health or safety; the
> official must both be aware of facts from which the inference could be drawn that a
> substantial risk of serious harm exists, and he must also draw the inference.

<u>Id</u>., at 1979.

The denial of single cell status by itself does not rise to the level of an Eighth Amendment

violation. <u>See</u>, <u>Rhodes v. Chapman</u>, 452 U.S. 337 (1981). In <u>Rhodes</u>, the Supreme Court addressed

the issue of whether the placing of two prisoners in a single cell constituted cruel and unusual

punishment in violation of the Eighth Amendment. <u>Id</u>. at 344–45. The Court held that in order for

prison conditions to rise to the level of an Eighth Amendment violation there must "involve the

unnecessary and wanton infliction of pain" which deprives inmates of the minimal necessities of life.

<u>Id</u>. at 346–47. In finding that the placement of two prisoners in a single cell did not rise to the level

of an Eighth Amendment violation on the part of the prison officials, the Supreme Court in <u>Rhodes</u>

stated:

> The double celling made necessary by the unanticipated increase in prison population
> did not lead to deprivations of essential food, medical care, or sanitation ... Although
> job and educational opportunities diminished marginally as a result of double celling,
> limited work hours and delay before receiving education do not inflict pain, much less
> unnecessary and wanton pain.

<u>Id</u>. at 348.

A District Court granted the defendant prison official's motion for summary judgment when the plaintiff, who was a protective custody inmate, was raped by his cellmate in segregation. The court stated:

> Here, the risk that Rayfield posed to Langston was no different than the risk posed by double-celling in any maximum security prison. Prisons are dangerous places full of dangerous people. Prisoners are dangerous, which is precisely why many are confined in the first place. McGill, 944 F.2d at 348. Some level of brutality, violence, and sexual aggression among prisoners is inevitable "unless all prisoners are locked in their cells 24 hours a day and sedated ('a solution' posing constitutional problems of its own). . . ."

Langston v. Peters, 1995 U.S. Dist. LEXIS 10985 (N.D. Ill. Aug. 1, 1995) aff'd 100 F.3d 1235 (7th Cir. Ill. 1996), reh'g denied, 1996 U.S. App. LEXIS 31835 (7th Cir. Ill. Dec. 4, 1996).

In the instant case, plaintiff alleges that placing two (2) inmates in a cell at Northern violated his Eighth Amendment rights. Amended Complaint, para. 35. Plaintiff alleges that double celling inmates have lead to a number of inmate on inmate assaults. Plaintiff has not alleged that he was ever assaulted by a cellmate. Because double celling, without more does not implicate an eighth amendment violation, plaintiff's claims about double celling of inmates should be dismissed.

### H.  PLAINTIFF CANNOT RECOVER COMPENSATORY DAMAGES AS HE CANNOT DEMONSTRATE AN ACTUAL PHYSICAL INJURY AS REQUIRED UNDER THE PLRA

Here, plaintiff alleges that defendants Chaplin, Lateer, Wooven and Power did not conduct any mental health evaluation to determine plaintiff's mental capacities. However, plaintiff has not alleged and cannot allege that he suffered a physical injury because of this alleged failure to conduct a mental health evaluation.

The Prison Litigation Reform Act provides that "No federal civil action may be brought by a prisoner. . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

Although the statute does not define "physical injury," the developing case law in this area reflects the view that, consistent with the Eighth Amendment jurisprudence, the predicate injury need not be significant but must be more than de minimis. See Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) (physical injury required as predicate for emotional distress claim must simply be more than de minimis); Leon v. Johnson, 96 F.Supp. 2d 244, 2000 WL 674698 at *3 (W.D.N.Y. 2000) (accord); Warren v. Westchester County Jail, 106 F. Supp. 2d 559, 570 (S.D.N.Y. 2000).

In Warren, the plaintiff suffered two superficial scratches to his face as a result of an altercation between the plaintiff and a correctional officer. The district court held that this was a de minimis injury insufficient to base a claim for emotional distress under the PLRA. Accordingly, the plaintiff's excessive force claim was dismissed.

> The Fifth Circuit in Siglar v. Hightower, supra, offered no definition of what is a physical injury, or a de minimis injury. The only standard offered was a de minimis injury was not sufficient to carry the day. A claim by a prisoner of an injury in prison he received in an unprovoked assault or excessive use of force by the guards or a failure to protect from other inmates should utilize the same approach to the nature of the injury and whether it actually falls under the new statute with regard to being a physical injury as to how people in a free world setting in exercising their day-to-day medical care would treat such injuries. Just as an example, there are numerous scrapes, scratches, cuts, abrasions, bruises, pulled muscles, back aches, leg aches, etc., which are suffered by free world people in just every day living for which they never seek professional medical care. Thus, an appropriate de minimis standard would be whether as a common-sense category approach to the injury; would the injury require or not require a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury?

In effect, would only home treatment suffice?  In the prison setting in the Texas Department of Correction Justice-Institutional Division, and in other prisons like this private prison, after an altercation the correction officers are usually required regardless of observable injuries, no injuries, etc., to take the inmate to the prison infirmary to have an examination to determine if the prisoner received any physical injury requiring professional medical care.  Thus, the mere reporting of cuts and abrasions, or swollen wrists by the medical personnel does not prove the inmate has received a physical injury which would measure up to the standards set out in the current statute, 42 U.S.C. 1997e(e), and Siglar v. Hightower, supra.

A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional.  It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks.  People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care.  Thus, the seriousness of the injury needed to rise above de minimis, would under Sigler v. Hightower, supra, require more than the types and kinds of bruises and abrasions above which the Plaintiff complains. Injuries treatable at home and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e).

Luong v. Hatt, 979 F.Supp. 481, 486 (N.D. Tex. 1997) cited by Chief Judge Walker in Concurring Opinion in Dawes v. Walker, 2001 U.S. App. LEXIS 2438 (2d Cir. 2001).

Here, plaintiff does not allege that he sustained any injury as a result of allegedly being denied mental health evaluations.  Accordingly, plaintiff may not maintain this action for compensatory damages for defendants' alleged failure to provide him with mental health treatment.

**I.    QUALIFIED IMMUNITY BARS ANY AND ALL CLAIMS FOR MONEY DAMAGES AS TO THE RECREATION IN RESTRAINTS ISSUE**

Here, because the conduct of defendants did not violate clearly established statutory or constitutional rights, the defendants are entitled to qualified immunity.

State officials performing discretionary functions in the course of their duties are immune from suits alleging constitutional violations "insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (quoted in Russell v. Coughlin, 910 F.2d 75, 78 (2d Cir. 1990); Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995); Oliviera v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994), cert. denied, 513 U.S. 1076, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995). Even when such rights are clearly established, qualified immunity will protect a government official "if it was objectively reasonable for [the official] to believe that his acts did not violate those rights." Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987); Russell, supra, 910 F.2d at 78; Gittens v. LeFevre, 891 F.2d 38, 42 (2d Cir. 1989). "The objective reasonableness test is met--and the defendant is entitled to immunity--if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995).

Qualified immunity for government officials serves not only as a defense from liability, but also to spare public officials from shouldering the burdens and expense of litigation. See, e.g., Warren v. Dwyer, 906 F.2d 70, 74 (2d Cir.), cert. denied, 498 U.S. 967, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990). "[B]are allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." Harlow, 457 U.S. at 817, 102 S.Ct. at 2738.

In analyzing a claim of qualified immunity, the Court must first determine whether the law alleged to have been violated was "clearly established" at the time the alleged actions occurred.

Johnson v. Jones, 515 U.S. 304, ____, 115 S.Ct. 2151, 2156 (1995); Robison v. Via, 821 F.2d 913,

921 (2d Cir. 1987). The contours of the right must be sufficiently clear that a reasonable official

would understand that what he is doing violates that right." Anderson, 483 U.S. at 640; Finnegan v.

Fountain, 915 F.2d 817, 823 (2nd Cir. 1990).  The Court also must decide whether it was clear at

the time of the alleged violations of law that an exception did not permit the actions in question.

Gittens v. LeFevre, 891 F.2d 38, 42 (2d Cir. 1989); Robison, 821 F.2d at 921.   Finally, even if it

concludes that the law was clearly established, the court must determine whether it was objectively

reasonable for the official to believe that his actions did not violate those rights.  Oliveira v. Mayer,

23 F.3d 642, 648-49 (2d Cir. 1994) cert. denied 513 U.S. 1076, 115 S.Ct. 721 (1995).   The

subjective motivation of the officials is irrelevant to the inquiry.  Anderson, 483 U.S. at 641;

Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991).  Rather, the focus is on whether

reasonable officials in the position of the defendants could have believed their actions were lawful.

Where reasonable officials could disagree, the official is entitled to qualified immunity.  Weg v.

Macchiarola, 995 F.2d 15, 18 (2d Cir. 1993).

Here, reasonable correctional officials in defendants position would believe that they were

acting lawfully in having the inmates recreate in restraints.  Handcuffing an inmate during recreation

was held not to implicate any eighth amendment concerns in Cousineau v. Armstrong, Ruling on

Defendant's Motion for Summary Judgment, No. 3:95CV1084(AVC) (D.Conn. September 23,

1998) (use of leg and arm restraints during his recreation did not violate the Eighth Amendment)

(attached); Figuerora v. Lopes, Ruling on Cross Motions for Summary Judgment, H-86-706, p. 14

(D.Conn. March 23, 1990) ("[P]laintiffs' resourcefulness in procuring weapons left no reason to

believe that showers, recreation yard, or visiting center are less likely out-of-cell bases from which to stage an attack than any other areas within the prison. The amount of force or constraint used was possibly inadequate, if anything, in light of episodes of escapes from handcuffs or even assault when cuffed) (attached); Tillman v. Warden, Memorandum of Decision on Respondent's Motion for Summary Judgment and Judgment of Dismissal, Docket No. CV-02-3659-S (February 26, 2003) (Having inmates recreate in shackles, cuff and tether chain did not violate the eighth amendment's prohibition against cruel and unusual punishment) (attached); Mundy v. Warden, Memorandum of Decision, Docket No. CV-95-2016-S (Bishop, J. December 22, 1995) (attached).

At the very least, reasonable correctional officials could disagree over whether it violated a Northern Phase I inmate's constitutional rights to have him recreate in handcuffs and leg irons. Accordingly, the defendants have qualified immunity with regard to plaintiff's complaint regarding recreation in restraints and that part of plaintiff's complaint should be dismissed.

DEFENDANTS,
John Armstrong, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Ann E. Lynch
Assistant Attorney General
Federal Bar No. ct08326
110 Sherman Street
Hartford, CT 06105
Telephone No.: (860) 808-5450
Fax No. (860) 808-5591
E-mail: ann.lynch@po.state.ct.us

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was sent by first-class mail, postage parepaid

this 8th day of October 2003, to:

Carnell Hunnicutt, Inmate No. 309675
MHC-X
PO Box 534
Jessup, Maryland   20794


Ann E. Lynch
Assistant Attorney General