UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED

FEB 25  12 57 PM '04

U.S. DISTRICT COURT
NEW HAVEN, CONN.

| | | |
|---|---|---|
| CARNELL HUNNICUTT | : | |
| | : | PRISONER |
| v. | : | Case No. 3:03CV627(PCD) |
| | : | |
| JOHN ARMSTRONG, et al.[1] | : | |

## RULING ON DEFENDANTS' MOTION TO DISMISS

Plaintiff Carnell Hunnicutt ("Hunnicutt") is a Connecticut-sentenced inmate currently confined within the Maryland Department of Correction.  In May 2002, he commenced this action with then-inmate Anthony Oliphant.[2]  On April 2, 2003, the court ordered the claims of the two plaintiffs severed and instructed

---

[1]The named defendants are John Armstrong; Larry Myers; Thomas Coates; Christine Whidden; Michael Lajoie; William Faneuff; Maurice Butler; Kim Weir; Patricia Wollenhaupt; Saundra Katz-Feinberg; Paul Chaplin, incorrectly identified as Paul Chaplain; Tom Latier; Irene Wooven; Kevin Power; Peter Matos; and Jack Tokarz.

[2]Although the complaint in Oliphant and Hunnicutt v. Armstrong, et al., 3:02cv947 (PCD), was not file-stamped by the court until May 30, 2002, it was signed by plaintiffs on May 8, 2002.  The Supreme Court considers an inmate's complaint to be filed as of the date it is given to prison officials for mailing to the court.  Thus, the action was filed on May 8, 2002.
Hunnicutt and Oliphant attempted to file this case as a class action.  Their motions for class certification were denied on August 30, 2002, and October 31, 2002.  On January 23, 2003, the court granted defendants' motion for more definite statement and ordered Oliphant and Hunnicutt to file an amended complaint alleging facts supporting only their own specific claims.

the Clerk to open this case to consider only Hunnicutt's claims.

In his amended complaint, Hunnicutt asserts seventeen claims and twenty-one causes of action addressing the conditions and circumstances of his confinement in Administrative Segregation at Northern Correctional Institution in Somers, Connecticut. Defendants have filed a motion to dismiss this action. For the reasons that follow, defendants' motion is granted.

I.    Standard of Review

When considering a Rule 12(b) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Thomas v. City of N.Y., 143 F.3d 31, 37 (2d Cir. 1998). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. See Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000); Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." Branham v. Meachum, 77 F.3d 626, 628 (2d Cir. 1996) (quoting Grant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995) (internal quotations omitted)). In its review of a motion

to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." <u>Samuels v. Air Transport Local 504</u>, 992 F.2d 12, 15 (2d Cir. 1993). The Second Circuit "ordinarily require[s] the district courts to give substantial leeway to pro se litigants." <u>Gomes v. Avco Corp.</u>, 964 F.2d 1330, 1335 (2d Cir. 1992).

II.  <u>Facts</u>

The court accepts as true the following allegations taken from the amended complaint.

Hunnicutt was placed on administrative segregation status at Northern Correctional Institution when he failed to complete the chronic discipline program within six months. He refused to participate in the mandatory mental health-based phase program and, therefore, could not complete the program and be released from administrative segregation status. Hunnicutt was not provided any indication of how long he would continue to be confined in administrative segregation.

Hunnicutt refused to participate in the psychological group therapy sessions required in the phase program. He objected to revealing personal beliefs and disclosing such things as an abusive childhood or family relationships in front of other inmates. Hunnicutt alleges that the mental health staff failed

3

to conduct a rigorous individual psychological evaluation of his condition and were not available for private meetings. Any meeting with mental health staff was conducted on the tier within hearing of other inmates. Mental health staff falsified reports and fabricated incidents to cover up the use of excessive force against inmates.

In addition, medical staff denied treatment and falsified medical incident reports to hide abuse of inmates by staff and the injuries inflicted on inmates. They denied access to physicians or outside medical treatment.

Prisoners at Northern Correctional Institution, all of whom are considered dangerous or threatening to the safety and security of other correctional facilities, were double-celled in a cell that was designed for one inmate. In addition, they were forced to go to recreation in handcuffs and shackles.

All inmates were handcuffed behind their backs whenever they left the cell. Because the inmates were double-celled, when the first inmate was being handcuffed, the other inmate had his hands free and could assault the handcuffed inmate. No compatibility assessment was done before inmates were assigned to cells and correctional staff did not adequately supervise the inmates.

If an inmate refused to accept a cellmate, he would be maced, slammed into the wall or placed in in-cell restraints in a

4

dirty isolation cell for up to seventy-two hours.  In the
isolation cell, he would be denied personal hygiene items, a
change of clothing, reading or writing materials and showers.
Restraints would not be removed to facilitate toilet use or
eating.

At one time, Hunnicutt had progressed beyond Phase I of the
three-phase program.  He was returned to Phase I for drawing a
cartoon that was considered offensive and threatening by staff
even though this action would not have been sufficient to warrant
administrative segregation placement if he were in general
population.

Staff issued false disciplinary reports for minor reasons
just to prolong an inmate's stay in administrative segregation.
Inmates were not provided the advocate of their choice at the
disciplinary hearing and were denied witnesses.  The assigned
advocates did not conduct independent investigations of the
charge.  In addition, inmates were not permitted to use
institutional surveillance tapes in their defense.

Hunnicutt was transferred to Virginia pursuant to the
Interstate Corrections Compact.  During the six months he was
confined in Virginia, Hunnicutt received various sanctions for
minor infractions.  When he returned to Connecticut, these
infractions were used to generate further sanctions.  In

5

addition, the time Hunnicutt was confined in segregation in
Virginia did not contribute to the time required for progress
through the Connecticut phase program.

Inmates in administrative segregation were denied access to
congregate religious services. Although they could speak with
religious leaders, they had to do so through the cell door and
were afforded no opportunity for private conversation. The
library of general reading material within the unit was
inadequate. Although inmates could file grievances, no receipts
were provided and the grievances often were lost.

Hunnicutt was not provided a meaningful classification
review as required under department policy. He could not
participate in or be present at any reviews to determine whether
he should be permitted to advance to the next phase of the three-
phase program.

III. Discussion

Hunnicutt asserts seventeen claims in his amended complaint
addressing the following areas: (1) indefinite confinement in
Administrative Segregation; (2) forced participation in the
mental health based phase program; (3) time spent in segregation
in Virginia; (4) double-celling; (5) use of in-cell restraints,
four-point restraints and excessive force; (6) the disciplinary
hearing and appeal process; (7) conspiratorially planned

6

sanctions; (8) lack of recreation and outdoor exercise; (9)
denial of religious services; (10) inadequate personal reading
material; (11) inadequate grievance procedures; (12) lack of
meaningful classification review; (13) secret hearings; (14)
violation of personal privacy rights; (15) lack of psychological
evaluations and fraudulent mental health services; (16)
retaliatory punishment and (17) denial of medical treatment.[3]

---

[3]Hunnicutt also includes a section in the amended complaint
entitled Causes of Action.  In this section he restates his
claims in twenty-one causes of action and specifies the
constitutional right implicated in each claim: (1) his prolonged,
indefinite confinement in Administrative Segregation violated his
right to due process; (2) Administrative Directive 9.4(B) is
unconstitutional; (3) the manner in which the phase program is
used violates his right to due process; (4) the time he was
confined in segregation in Virginia violates his right to due
process; (5) and (19) the denial of religious services violates
his First Amendment rights; (6) the mandatory group therapy
sessions conducted as a part of the phase program violate his
Fourth Amendment right to personal privacy; (7) the forced
participation in the mental health bases phase program violates
his Eighth and Fourteenth Amendment rights; (8) the
conspiratorially planned disciplinary and appeal process violates
his Eighth and Fourteenth Amendment rights; (9) the biased secret
classification reviews conducted in his absence violate his due
process and Fourteenth Amendment rights; (10) the non-existent
semi-annual classification reviews for overall removal from
Administrative Segregation violate his due process and Fourteenth
Amendment rights; (11) the denial of access to the inmate
grievance procedure violates his due process and Fourteenth
Amendment rights; (12) conspiratorially planned disciplinary
sanctions violate his Eighth and Fourteenth Amendment rights;
(13) double-celling in cells designed for one person violates his
Eighth Amendment rights; (14) handcuffing one inmate while his
cellmate was unrestrained constitutes deliberate indifference to
a possible assault; (15) subjecting an inmate to in-cell
restraints for a period up to seventy-two hours without hygiene
items, proper bedding and clothing and access to the restroom

7

Defendants move to dismiss the amended complaint on eight grounds: (1) the Eleventh Amendment bars any claims for damages against them in their official capacities; (2) Hunnicutt includes no personal allegations against defendants Lajoie, Butler, Myers, Coates, Whidden, Faneuff, Weir, Katz-Feinberg, Chaplin, Wooven, Power, Matos and Tokarz; (3) many claims were included in cases previously settled and are barred by res judicata; (4) Hunnicutt alleges no actual injury suffered as a result of the denial of medical care; (5) forced participation in the phase program is not a constitutional violation; (6) Hunnicutt has no constitutional right to a single cell; (7) Hunnicutt has alleged no actual physical injury from the alleged failure to conduct mental health evaluations; and (8) the defendants are protected by qualified immunity as to any claim regarding recreation in

---

violated his Eighth Amendment rights; (16) denial of outside recreation without full restraints violated his Eighth Amendment rights; (17) denial of proper medical treatment violated his Eighth Amendment rights; (18) non-existent mental health evaluations and services violated his Eighth Amendment rights; (20) forcing illegal and unconstitutional policies on him constitutes deliberate indifference and conspiracy as well as violates his First, Fourth, Eighth and Fourteenth Amendment and due process rights; and (21) subjecting him to physical, psychological and emotional torture violates his Eighth Amendment rights. A comparison of the enumerated causes of action and the claims, each of which is set forth in a separate section of the amended complaint, indicates that all of the causes of action are encompassed in the claims. Thus, the court need not separately address the twenty-one causes of action.

restraints.  In response, Hunnicutt challenges the validity of the referenced settlement and argues that he described the actions of many of the defendants in inmate grievances he filed.

A.    Res Judicata

The court first considers defendants' argument that many of Hunnicutt's claims are barred by res judicata.

On May 3, 2002, Hunnicutt signed a settlement agreement and release settling six pending federal lawsuits and fifteen pending state court actions in exchange for $5000.00 and an agreement that the state would pursue an out-of-state transfer.  Hunnicutt was represented by counsel during the settlement negotiations. The court takes judicial notice of the settlement agreement and release.  These documents have been filed in the six federal cases and copies of the documents are attached to defendants' memorandum.  The court also takes judicial notice of the complaints and petitions filed in several of the settled actions. These documents were filed in the state or federal court and copies are attached to defendants' memorandum.

The doctrine of res judicata precludes a party from litigating a claim more than once.  Under the doctrine, a final judgment on the merits of an action precludes the parties from relitigating claims that were or could have been raised in that action.  See Allen v. McCurry, 449 U.S. 90, 94 (1980); Chase

9

Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 345 (2d Cir. 1995). Whether a claim that was not included in the previous action could have been raised "depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." Woods v. Dunlop Tire Corp., 972 F.2d 36, 38 (2d Cir. 1992) (internal citations and quotation marks omitted), cert. denied, 506 U.S. 1053 (1993). See also Joe's Pizza, Inc. v. Aetna Life & Casualty Co., 236 Conn. 863, 675 A.2d 441, 446 (Conn. 1996) (explaining that "the appropriate inquiry . . . is whether the party had an adequate opportunity to litigate the matter in the earlier proceeding").

In addition, relitigation of a specific issue may be precluded under the doctrine of collateral estoppel where the first action is a petition for writ of habeas corpus. The important consideration is that the issue was fully addressed by the habeas court. See Kulak v. City of New York, 88 F.3d 63, 71-72 (2d Cir. 1996) (applying collateral estoppel to bar relitigation in a federal section 1983 action of issues previously decided in a state habeas proceeding). Finally, settlement and dismissal of an action operates as a decision on the merits of the claims and precludes relitigation of the

10

claims.  See Marvel Characters, Inc. v. Simon, 310 F.3d 280, 287

(2d Cir. 2002) ("It is clear that a dismissal, with prejudice,

arising out of a settlement agreement operates as a final

judgment for res judicata purposes.")

The settlement agreement Hunnicutt signed indicated that it
was the

> full and final settlement of all claims or
> rights of action which have arisen or may in
> the future arise out of any of the
> circumstances which are the subject of these
> lawsuits, which could have been the subject
> of these lawsuits and/or relate to, refer to
> and/or reflect plaintiff's incarceration in
> the State of Connecticut.

(Settlement Agreement at 4, attached to Defs.' Mem.)  The settled

cases included many claims relevant to this action.

In Hunnicutt v. Armstrong, et al., No. 3:98cv1856 (HBF),

Hunnicutt alleged that he was denied the ability to practice his

religion and denied access to a spiritual advisor (claim 9 in the

amended complaint).  In Hunnicutt v. St. John, et al., No.

3:01cv770 (AHN), Hunnicutt alleged that correctional staff

harassed and retaliated against him for filing cases (claim 16),

correctional staff used excessive force and confined him in four-

point restraints (claim 5), prison officials failed to conduct

proper disciplinary hearings in that he was denied witnesses, a

proper investigation by his advocate and use of institutional

surveillance tapes for his defense (claim 6), and defendant

Finally, in Hunnicutt, et al. v. Rowland, et al., No. CV 00-
0803441-S, Hunnicutt alleged that defendants Wollenhaupt and
Katz-Feinberg refused to provide medical treatment and falsified
medical reports (claim 17). Hunnicutt does not include in the
amended complaint the dates upon which any incidents occurred.
He signed the original complaint, which includes the same claims,
on May 8, 2002, only five days after he signed the settlement
agreement and seven days before the settlement agreement was
signed by defendants. Thus, the court concluded that Hunnicutt
was aware of all of the claims included in this action before the
settlement became final.

Hunnicutt does not contest defendants' assertion that these
claims were included in settled actions. Instead, he argues that
the settlement agreement is invalid because he was transferred to
Maryland, not Tennessee or Minnesota. The court has reviewed the
settlement agreement. Nowhere do defendants promise that
Hunnicutt would be transferred to Tennessee or Minnesota. The
settlement agreement states that defendants will pursue a
transfer to one of those states. The release states that
defendants will attempt to place Hunnicutt in Tennessee or
Minnesota. Hunnicutt does not argue that defendants failed to
contact those states and discuss a transfer.

Hunnicutt was represented by counsel during the settlement

13

negotiations.  Thus, the court is confident that all aspects of
the settlement were thoroughly discussed.  Also, the court notes
that Hunnicutt has not moved to vacate the settlement.  Hunnicutt
is an experienced pro se litigator.  This characterization is
evidenced by the twenty-one state and federal cases included in
the settlement.  The court concludes that Hunnicutt's
characterization of the settlement agreement as promising a
transfer to Minnesota or Tennessee is disingenuous.  Defendants'
motion to dismiss is granted as to all claims that were included
in Hunnicutt's settled state habeas action as well as all claims
included in or relating to claims asserted in the settled civil
rights cases.

The court considers defendants' additional arguments as they
relate to the remaining claims: conspiratorially planned
sanctions, inadequate personal reading material, inadequate
grievance procedures and inadequate mental health service.  In
his prayer for relief, Hunnicutt seeks a declaratory judgment
that the allegedly illegal use of the administrative segregation
phase program is unconstitutional.  As all claims regarding
Hunnicutt's participation in this program have been dismissed,
the request for declaratory judgment is denied.

B.    Official Capacity Damages Claims

Defendants argue that any claims seeking damages from any

14

defendant in his or her official capacity must be dismissed.  As Hunnicutt's request for declaratory relief has been denied, the only remaining requests for relief seek damages.

Generally, a suit for recovery of money may not be maintained against the state itself, or against any agency or department of the state, unless the state has waived its sovereign immunity under the Eleventh Amendment.  See Florida Dep't of State v. Treasure Salvors, 458 U.S. 670, 684 (1982). Section 1983 does not override a state's Eleventh Amendment immunity.  See Quern v. Jordan, 440 U.S. 332, 342 (1979).  The Eleventh Amendment immunity which protects the state from suits for monetary relief also protects state officials sued for damages in their official capacity.  See Kentucky v. Graham, 473 U.S. 159 (1985).  A suit against a defendant in his official capacity is ultimately a suit against the state if any recovery would be expended from the public treasury.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 n.11 (1984).

Hunnicutt has named the defendants in their individual and official capacities.  He does not specify whether he seeks damages from them in their individual or official capacities. Because an award of damages against the defendants in their official capacities is barred by the Eleventh Amendment, the motion to dismiss is granted to the extent that the complaint may

15

Wollenhaupt failed to provide proper medical treatment (claim 17).

In Hunnicutt v. Warden, No. CV 02-3518-S, Hunnicutt argues that he was forced to participate in mental health-based programs (claims 2 & 14), confined indefinitely in administrative segregation in conditions of prolonged isolation and sensory deprivation with constant harassment and retaliatory actions by correctional staff (claim 1), denied medical treatment (claim 17), denied religious services (claim 9), forced to complete unconstitutional programs or remain in administrative segregation indefinitely (claims 1 & 2), subjected to assaults by other inmates (claim 4), denied credit toward his administrative segregation time in Connecticut for time spent in segregation in Virginia and use of disciplinary infractions in Virginia to impose additional penalties in Connecticut (claim 3), deprived of personal property, denied progress through the phase program by correctional staff he has previously sued (claim 12), denied access to secret meetings regarding his classification (claim 13), forced to recreate in handcuffs and shackles (claim 8), denied medical treatment (claim 17), and forced to share his cell with an inmate considered a threat to institutional safety and security under conditions of inadequate security and supervision with no screening for inmate compatibility (claim 4).

be construed as seeking damages from the defendants in their official capacities.

C.    Personal Involvement

Defendants next argue that Hunnicutt fails to allege the personal involvement of defendants Lajoie, Butler, Myers, Coates, Whidden, Faneuff, Weir, Katz-Feinberg,[4] Chaplin, Wooven, Power, Matos and Tokarz in any of his claim.    In response, Hunnicutt states that he included specific incidents in the institutional grievances that he filed.

It is settled law in this circuit that in a civil rights action for monetary damages against a defendant in his individual capacity, a plaintiff must demonstrate the defendant's direct or personal involvement in the actions which are alleged to have caused the constitutional deprivation.    See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).

Many of the defendants are supervisory officials.    A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort." Leonard v. Poe, 282 F.3d 123, 140 (2d Cir. 2002).    Section 1983 imposes liability only on the official causing the violation.

---

[4]Defendant Katz-Feinberg is referenced only in connection with Hunnicutt's claim of denial of medical care and falsification of medical reports.    As this claim has been dismissed, the court need not consider whether Hunnicutt has alleged the personal involvement of defendant Katz-Feinberg.

16

Thus, the doctrine of respondeat superior is inapplicable in section 1983 cases.  See Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999).

> [A] supervisor may be found liable for his deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and [his] injury.

Leonard, 282 F.3d at 140.

As indicated above, the remaining claims include conspiratorially planned sanctions, inadequate materials for pleasure reading, inadequate grievance procedures and inadequate mental health service.  Thus, the court considers only whether Hunnicutt alleged facts demonstrating the personal involvement of these defendants in the remaining claims.

In its ruling granting defendants' motion for more definite statement, the court ordered Hunnicutt and Oliphant to allege facts that would put defendants on notice of the specific claims against them instead of including only generalized statements. In the description of the parties in his amended complaint, Hunnicutt alleges that defendant Lajoie conspired to violate his rights; defendant Myers failed to correct illegal practices; defendant Chaplin failed to conduct a psychological evaluation,

17

would only speak with him on the tier and conspired to cover up psychological damage; defendants Wooven and Power failed to evaluate his mental health and would not speak with him privately; and defendants Matos and Tokarz conspired to enforce illegal policies.  Hunnicutt has not alleged any fact suggesting the personal involvement of defendants Coates, Whidden, Faneuff, Butler and Weir in the remaining claims.

In addition, although Hunnicutt has alleged that the supervisory defendants enforced illegal policies or practices, he has alleged no facts suggesting that he made any of the supervisory defendants aware of his claims.  Hunnicutt must show an affirmative causal link between the action or inaction of a supervisory defendant and his injuries.  Because Hunnicutt has not alleged facts indicating that he made any supervisory officials aware of his claims, he has not demonstrated the personal involvement of defendants Matos, Tokarz and Myers.

In opposition to the motion, Hunnicutt states that he included specific references to many of the defendants in institutional grievances he filed.  When ruling on a motion to dismiss, the court may consider  "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken."  Samuels v. Air Transport Local 504, 992 F.2d 12,

18

15 (2d Cir. 1993).  The inmate grievances referenced in the amended complaint are not attached as exhibits.  They are not matters of public record or official pronouncements that would warrant the court taking judicial notice.  See, e.g., Lumen Constr., Inc. v. Brant Constr. Co., 780 F.2d 691 (7th Cir. 1985)(appellate court took judicial notice of state pleadings filed after district court issued its decision); Christman v. Skinner, 468 F.2d 723, 726 (2d Cir. 1972)(proper for trial court to take judicial notice of state prison regulations).  Thus, the only way the court can consider Hunnicutt's grievances is if they are incorporated by reference into the amended complaint.

The Second Circuit has held that "[l]imited quotation does not constitute incorporation by reference." Cosmas v. Hassett, 886 F.2d 8, 12 (2d Cir. 1989) (internal quotation marks and citation omitted).  In Cosmas, the complaint discussed and included brief quotations from the document in question.  Here, Hunnicutt merely includes a reference number for various grievances.  He does not quote the grievance or attach a copy to the amended complaint or his memorandum in opposition to the motion to dismiss.  Thus, the inmate grievances are not incorporated by reference into the amended complaint and Hunnicutt's argument fails.  Cf. National Ass'n of Pharmaceutical Mfrs. v. Averst Laboratories, 850 F.2d 904, 910 n.3 (2d Cir.

19

1988) (noting that court could consider document incorporated by reference where plaintiff referred to letter in complaint and quoted entire text of letter in memorandum of law). Because the inmate grievances are not incorporated into the amended complaint, Hunnicutt has not alleged the personal involvement of defendants Coates, Whidden, Faneuff, Butler, Weir, Myers, Matos and Tokarz in his remaining claims. The defendants' motion to dismiss is granted as to the remaining claims against these defendants.

      D.   <u>Conspiracy Claims</u>

Hunnicutt alleges throughout the amended complaint that the defendants conspired to violate his constitutionally protected rights. Defendants argue that these allegations are insufficient to state a claim for conspiracy.

The Second Circuit has consistently held that a claim of conspiracy to violate civil rights requires more than general allegations. "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." <u>Ciambriello v. County of Nassau</u>, 292 F.3d 307, 325 (2d Cir. 2002) (quoting <u>Dwares v. City of N.Y.</u>, 985 F.2d 94, 100

20

(2d Cir.1993) (citations, internal quotation marks, and internal alterations omitted)). See also, e.g., Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir. 1999) (holding that vague, general or conclusory allegations of conspiracy are insufficient to withstand a motion to dismiss); Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997). "In order to survive a motion to dismiss on his § 1983 conspiracy claim, [plaintiff] must allege (1) an agreement . . . ; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Ciambriello, 292 F.3d at 324-25 (citations omitted).

Hunnicutt includes in his amended complaint general references and conclusory statements that various defendants conspired to keep him confined in administrative segregation indefinitely, either by refusing to advance him to the next phase or imposing sanctions to ensure his continued confinement at the phase 1 level. These general statements fail to comply with the Second Circuit's pronouncement on the proper manner to allege a conspiracy claim. Hunnicutt has not cited any specific conduct to support his allegations of conspiracy. He merely concludes that a conspiracy existed because he did not advance quickly through the phase program. The court concludes that the vague statements in the amended complaint are insufficient to allege a

claim of conspiracy and are insufficient to put defendants on notice regarding what actions they have taken to support a conspiracy claim.  Thus, defendants' motion to dismiss is granted as to any conspiracy claims.

E.   <u>Mental Health Evaluations</u>

Hunnicutt also alleges that defendants Chaplin, Latier, Wooven and Power failed to conduct proper mental health evaluations.  Defendants contend that Hunnicutt has not alleged an actual physical injury as required to state a claim for psychological or emotional injury.

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  This requirement has been applied to a claim for insufficient mental health care.  <u>See</u> <u>Callegari v. Chesterman</u>, No. C 02-3624 MMC (PR), 2002 WL 31478178, at *2 (N.D. Cal. Nov. 4, 2002).

Hunnicutt alleges no physical injury as a result of the alleged failure to conduct proper mental health evaluations.  Thus, his claim for damages is precluded by section 1997e(e).

The Second Circuit has determined, however, that this prohibition applies only to a claim for compensatory damages.  <u>See</u> <u>Thompson v. Carter</u>, 284 F.3d 411, 417 (2d Cir. 2002)

22

("[b]ecause Section 1997e(e) is a limitation on recovery of damages for mental and emotional injury in the absence of a showing of physical injury, it does not restrict a plaintiff's ability to recover compensatory damages for actual injury, nominal or punitive damages, or injunctive and declaratory relief"). Hunnicutt seeks compensatory and punitive damages from defendants Chaplin, Latier, Wooven and Power. Thus, defendants' motion to dismiss is granted as to the claims for compensatory damages only against defendants Chaplin, Latier, Wooven and Power.

F. Remaining Claims

Defendants do not specifically address Hunnicutt's claims for punitive damages as a result of inadequate mental health evaluations and of an inadequate library for pleasure reading and inadequate grievance procedures. In addition, defendants do not address Hunnicutt's contention that he has filed his claims pursuant to 42 U.S.C. §§ 1981, 1985, 1986 and 1988.

Pursuant to 28 U.S.C. § 1915(e)(2)(B), "the court shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous or malicious; . . . fails to state a claim on which relief may be granted; or . . . seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915 (e)(2)(B)(i) - (iii). Dismissal of a complaint by

a district court under any of the three enumerated sections in 28 U.S.C. § 1915(e)(2)(B) is mandatory rather than discretionary. See Cruz v. Gomez, 202 F.3d 593, 596 (2d Cir. 2000). Dismissal of the complaint for failure to state a claim, under 28 U.S.C. 1915(e)(2)(B)(ii), is only appropriate if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Id. at 597 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In addition, "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim," the court should permit "a pro se plaintiff who is proceeding in forma pauperis" to file an amended complaint that states a claim upon which relief may be granted. Gomez v. USAA Federal Savings Bank, 171 F.3d 794, 796 (2d Cir. 1999). After careful review, the court concludes that the remaining claims should be dismissed.

     1.   Mental Health Evaluation

     Hunnicutt alleges that defendants Chaplin, Latier, Wooven and Power failed to conduct an adequate mental health examination and failed to meet with him privately. He states that this conduct violated his Eighth Amendment right and violated

"psychiatrist/psychologist-patient privileged communications."[5]

Deliberate indifference by prison officials to a prisoner's serious medical or mental health need constitutes cruel and unusual punishment in violation of the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). To prevail on such a claim, however, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference" to serious medical or mental health needs. Id. at 106. A prisoner must show intent to either deny or unreasonably delay access to needed medical or mental health care or the wanton infliction of unnecessary pain by prison personnel. See Id. at 104-05. Mere negligence will not support a section 1983 claim; the conduct complained of must "shock the conscience" or constitute a "barbarous act." McCloud v. Delaney, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970)).

"Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. A treating physician will be liable under the

---

[5]Hunnnicutt also includes allegations against these defendants concerning the conditions of confinement in administrative segregation. All conditions of confinement claims have been dismissed as previously decided by settled cases. The court considers only the claims that were not included in previously settled cases.

Eighth Amendment only if his conduct is "repugnant to the conscience of mankind." Tomarkin v. Ward, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982) (quoting Estelle, 429 U.S. at 105-06). The civil rights statute was not meant to redress medical malpractice claims that can be adequately resolved under state tort law. See Tomarkin, 534 F. Supp. at 1230-31. Inmates do not have a constitutional right to the treatment of their choice. See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986). Thus, mere disagreement with prison officials about what constitutes appropriate care does not state a claim cognizable under the Eighth Amendment. See Ross v. Kelly, 784 F. Supp. 35, 44 (W.D.N.Y.), aff'd, 970 F.2d 896 (2d Cir.), cert. denied, 506 U.S. 1040 (1992).

Reading Hunnicutt's allegations regarding the denial of a thorough individual mental health evaluation and private meetings, the court concludes that Hunnicutt allegations reflect a disagreement about mental health treatment. Hunnicutt alleges that he was asked to attend group mental health sessions, but refused. Instead, he wanted private sessions and an individual evaluation. That choice is not reserved to the inmate as a matter of right. Accordingly, the court concludes that Hunnicutt's mental health claims constitute a disagreement over treatment which is not cognizable under section 1983.

In addition, Hunnicutt alleges that the defendants violated his Eighth Amendment right to psychiatrist-patient confidentiality.  The Eighth Amendment protects against conduct that "shock[s] the conscience" or constitute[s] a "barbarous act."  McCloud v. Delaney, 677 F. Supp. at 232.  Research has revealed no cases upholding an Eighth Amendment claim of this type.  Hunnicutt's mental health claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Although some personal information is constitutionally protected under the Ninth Amendment, Hunnicutt has not asserted a Ninth Amendment claim.  The court is aware that, although pro se, Hunnicutt is an experienced litigator and has identified the source of each constitutional right relied upon in the amended complaint.  Thus, the court will not presume that Hunnicutt is attempting to raise a claim not identified and will not consider this claim under the Ninth Amendment.

In addition, the language Hunnicutt uses suggests that he is asserting a claim for violation of Connecticut General Statutes §§ 52-146c, entitled "Privileged communications between psychologist and patient, or 52-146d, entitled "Privileged communications between psychiatrist and patient" or of Connecticut Department of Correction Administrative Directive 8.7, which deals with the confidentiality of health records.

27

Violation of state law, however, is not cognizable under section
1983.  See Lugar v. Edmondson Oil Co., 457 U.S. 922, 930 (1982)
(holding that to state a claim for relief under section 1983,
plaintiff must allege facts demonstrating that he has been
deprived of a constitutionally or federally protected right).
Thus, any federal claim based upon a violation of state law
regarding confidentiality of mental health information is
dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

2.  Library for Pleasure Reading

Hunnicutt challenges the institutional procedure for
distributing books for pleasure reading.  He contends that the
practice of starting at one end of the tier and proceeding cell-
by-cell to the end, an order that is reversed the following week,
ensures that the inmates in the last cells will not be able to
get desirable books to read for that week.  He also argues that
he sometimes finishes reading the books before the week has
concluded.

Research has revealed no constitutional right to unlimited
pleasure reading.  See Pippins v. Adams County Jail, 851 F. Supp.
1228, 1233 (C.D. Ill. 1994) ("The Court is aware of no
constitutional guarantee to unlimited pleasure reading."); see
also Williams v. Karnopp, 2003 WL 23163053 (W.D. Wis. Jan. 27,
2003) (holding that restriction on number of books allowed for

28

segregation inmate was "reasonably related to the prison's legitimate penological interest of persuading inmates in disciplinary segregation to improve their conduct in order to receive additional privileges"). Accordingly, this claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[6]

### 3.  Grievance Procedure

Hunnicutt alleges that the inmate grievance procedure was insufficient because grievances were lost or officials failed to respond as provided under institutional rules.

"A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." Levine v. Torvik, 986 F.2d 1506, 1515 (6th Cir. 1993)(citing Engle v. Isaac, 456 U.S. 107 (1982)), overruled in part on other grounds by Thompson v. Keohane, 516 U.S. 99, 111 (1995). This court agrees with the rationale of the Sixth Circuit and concludes that any claim that the DOC defendants failed to follow the grievance procedures set forth in Administrative Directive 9.6 does not demonstrate the denial of a constitutionally or federally protected right and, thus, is not cognizable in this civil rights action. Any claim for failure to

---

[6]To the extent that this claim can be construed as a further challenge to the conditions of confinement in administrative segregation, the claim is barred pursuant to the settlement.

29

comply with institutional policy or rules is dismissed pursuant
to 28 U.S.C. § 1915(e)(2)(B)(ii).

       4.   <u>Section 1981</u>

Hunnicutt states that he brings this action pursuant to 42
U.S.C. § 1981.  Section 1981 provides in pertinent part:

> All persons within the jurisdiction of the
> United States shall have the same right in
> every State and Territory to make and enforce
> contracts, to sue, be parties, give evidence,
> and to the full and equal benefits of all
> laws and proceedings for the security of
> persons and property as is enjoyed by white
> citizens, and shall be subject to like
> punishment, pains, penalties, taxes,
> licenses, and exactions of every kind, and to
> no other.

42 U.S.C. § 1981(a).

Section 1981 "contemplates protection of those discriminated
against on the basis of ancestry or ethnic characteristics . . .
." <u>Avello v. Hammons</u>, No. 96 Civil 0927 (DAB), 1997 WL 218466,
at *7 (S.D.N.Y. April 29, 1997).  Generally, section 1981 is
invoked to prohibit racial discrimination in the making and
enforcement of private contracts.  See <u>Miller v. CITICORP</u>, No. 95
Civ. 9728 (LAP), 1997 WL 96569, at *8 (S.D.N.Y. March 4, 1997)
("Section 1981 prohibits all racial discrimination in the making
of private contracts . . . ."); <u>Philippeaux v. North Central
Bronx Hosp.</u>, 871 F. Supp. 640, 654 (S.D.N.Y. 1994) ("there are
two separate issues in finding liability under Section 1981:

first whether there has been a substantive violation of plaintiff's right to make contracts based on his race, and second, whether the named defendants can be held liable for that violation"), aff'd, 104 F.3d 353 (2d Cir. 1996), cert. denied, 117 S. Ct. 1110 (1997); Smith v. The Sav. Bank of Rockland County, No. 91 Civ. 3088 (JFK), 1992 WL 350743, at *7 (S.D.N.Y. Nov. 16, 1992) ("To violate Section 1981, a defendant must have prevented a plaintiff from making and enforcing contracts"). See also The Honorable Charles R. Richey, Prisoner Litigation in the United States Courts 146 (1995) ("Notwithstanding the breadth of its language, the primary thrust of [section 1981] is directed at employment contracts with a racial animus.").

Here, the complaint contains no allegations relating to Hunnicutt entering into a contractual relationship or any other activity specifically referenced in the statute. Thus, the Hunnicutt's reliance on section 1981 appears misplaced. See Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993) (determining that, to state a claim pursuant to section 1981, plaintiff must allege that he was subject of racial discrimination concerning one or more of the activities enumerated in the statute).

Further, even if the court were to conclude that the Hunnicutt's claim fell within the province of section 1981, he

31

"must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." Yusuf v. Vassar College, 35 F.3d 709, 713 (2d Cir. 1994) (citations omitted). See, e.g., Ryans v. Gresham, No. 9:97 CV 224(TH), 1998 WL 262385, at *7 (E.D. Tex. Apr. 10, 1998) (holding that failure to include in complaint more that subjective belief that arrest was racially motivated precluded consideration of section 1981 claim); Odom v. Columbia University, 906 F. Supp. 188, 194 (S.D.N.Y. 1995) (holding insufficient to state a claim pursuant to section 1981 allegations of racial discrimination and unequal treatment where plaintiff failed to allege a single example of a student treated differently by university).

In this case, Hunnicutt fails to include any allegation suggesting that the actions of the defendants were racially motivated. Thus, any claims brought pursuant to section 1981 are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

5.    Section 1985

Hunnicutt also states that he brings this action pursuant to 42 U.S.C. § 1985. In general, section 1985 prohibits conspiracies to interfere with civil rights. Although Hunnicutt fails to identify the subsection of section 1985 upon which he relies, the court concludes that plaintiff brings his claim

pursuant to subsection (3).[7]

Generally, section 1985(3) prohibits conspiracies to deprive persons of equal protection of the laws.  In order to state a claim pursuant to this provision, a plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States.

Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999).  Further, the conspiracy must be motivated by "some racial or perhaps otherwise class based, invidious discriminatory animus."  Id. (citation

---

[7] Subsection (1) of section 1985 "is designed to provide a remedy against conspiracies that interfere with 'the performance of official duties by federal officers.'"  Affrunti v. Zwirn, 892 F. Supp. 451, 455 n.4 (E.D.N.Y. 1995) (citing Kush v. Rutledge, 460 U.S. 719, 724 (1983)), aff'd, 100 F.3d 943 (2d Cir. 1996).  See also Koch v. Mirza, 869 F. Supp. 1031, 1038 n.2 (W.D.N.Y. 1994) (section 1985(1) applies to individuals holding office).  Here, the complaint contains no allegations of a conspiracy to impede a federal official from exercising his duties.  Thus, this subsection is inapplicable to this action.

Subsection (2) of section 1985 generally prohibits conspiracies aimed at deterring witnesses from participating in either a federal or state judicial proceeding.  "The essential allegations of a § 1985(2) claim of witness intimidation are (1) a conspiracy between two or more persons, (2) to deter a witness by force, intimidation or threat from attending court or testifying freely in any pending matter, which (3) results in injury to the plaintiff."  Chahal v. Paine Webber Inc., 725 F.2d 20, 23 (2d Cir. 1984).  Hunnicutt's amended complaint contains no allegations that defendants engaged in a conspiracy to intimidate witnesses.  Thus, subsection 2 is inapplicable to Hunnicutt's claims.

omitted).  Section 1985(3) may not be construed as a "general federal tort law"; it does not provide a cause of action based on the denial of due process or other constitutional rights. Griffin v. Breckenridge, 403 U.S. 88, 101-02 (1971).

The court has considered Hunnicutt's conspiracy claims above and found them insufficient.  Thus, he fails to state a claim under section 1985(3).  Moreover, even if the court were to find that Hunnicutt had alleged sufficient facts to support a claim of conspiracy, he alleges no facts from which the court could infer a racial or class-based animus.  The mere fact that Hunnicutt is black and, presumably, the defendants are white is insufficient to support a section 1985 claim.  See Gatling v. Atlantic Richfield Co., 577 F.2d 185, 188 (2d Cir.) (proof that the plaintiff is black is insufficient to justify an inference that defendant's conduct was racially motivated), cert. denied, 439 U.S. 861 (1978).  Thus, any claim brought pursuant to section 1985 is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### 6.  Section 1986

Hunnicutt also referenced 42 U.S.C. § 1986.  Section 1986 provides no substantive rights; it provides a remedy for the violation of section 1985.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 222 n.28 (1970) (Brennan, J., concurring in part and dissenting in part).  Thus, a prerequisite for an actionable

34

claim under section 1986 is a viable claim under section 1985.
Because the court has dismissed Hunnicutt's section 1985 claim,
the section 1986 claim is dismissed as well.

       7.   Section 1988

     Finally, Hunnicutt seeks relief pursuant to 42 U.S.C. §
1988.  Section 1988(a) provides that the district courts shall
exercise their jurisdiction over civil right cases in conformity
with federal law where appropriate or state law.  This section,
however, does not provide an independent cause of action.  See
Moor v. Alameda County, 411 U.S. 693, 702-06, reh'g denied, 412
U.S. 963 (1973).

     Furthermore, to the extent that Hunnicutt is seeking
attorney's fees pursuant to § 1988(b), his claim also fails.  A
pro se litigant is not entitled to attorney's fees under section
1988.  See Kay v. Ehrler, 499 U.S. 432, 435 (1991); Presnick v.
Santoro, 832 F. Supp. 521, 531 (D. Conn. 1993).  Thus, all claims
pursuant to section 1988 are dismissed.  See 28 U.S.C. § 1915
(e)(2)(B)(i).

IV.  Conclusion

     Defendants' motion to dismiss [**doc. #49**] is **GRANTED**.  All
other claims, including the claim for punitive damages for
improper mental health evaluation against defendants Chaplin,
Latier, Wooven and Power, the claims regarding access to reading

materials and the claims brought under 42 U.S.C. §§ 1981, 1985, 1986 and 1988 are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).  The Clerk is directed to enter judgment in favor of defendants and close this case.

    **SO ORDERED** this ____24ᵗʰ____ day of February, 2004, at New Haven, Connecticut.

                                        _____
                                        Peter C. Dorsey
                                        United States District Judge

36